Filed 2/19/15 (unmodified opn. attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| CITIZENS FOR FAIR REU RATES et al., | |
| Plaintiffs and Appellants, | C071906 |
| v. | (Super. Ct. Nos. 171377, 172960) |
| CITY OF REDDING et al., | ORDER MODIFYING OPINION AND DENYING PETITIONS FOR REHEARING |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed January 20, 2015, in the above cause is modified as follows:

On page 2, replace the third sentence of the first paragraph with the following:  To this end, Proposition 218 added article XIII C to require that new taxes imposed by a local government be subject to vote by the electorate.  (Art. XIII A, § 4; art. XIII C, § 1, as approved by voters, Gen. Elec., Nov. 5, 1996; see also 2B West's Ann. Cal. Codes (2013) pp. 362-363.)  General taxes may be approved by a simple majority of voters, but special taxes require two-thirds voter approval.  (Art. XIII C, § 2, subds. (c) & (d).)

On page 3, replace the first sentence of the second full paragraph with the following:  Plaintiffs in this case (Citizens for Fair REU Rates, Michael Schmitz, Shirlyn

1

Pappas, and Fee Fighter LLC) challenge the PILOT on grounds it constitutes a tax for which article XIII C requires voter approval.

Also on page 3, replace the first sentence of the third full paragraph with the following:  We conclude the PILOT constitutes a tax under Proposition 26 for which Redding must secure voter approval unless it proves the amount collected is necessary to cover the reasonable costs to the city to provide electric service.

On page 11, delete the first paragraph.

On page 13, delete the last sentence of the first full paragraph.

On page 19, replace the last sentence of the first full paragraph with the following: Although Propositions 26 and 218 stand in pari materia -- namely they relate to the same subject (*People v. Honig* (1996) 48 Cal.App.4th 289, 327) -- nothing in either constitutional amendment grandfathers in the PILOT simply because it has been a customary recurrence in the Redding municipal budget.

On page 22, replace the second sentence of the second full paragraph with the following:  Even if Redding's rates were the lowest in California, Proposition 26 would nonetheless require the PILOT to either reflect the city's reasonable cost of providing electric service or be approved by voters.

On page 25, add the following to the end of footnote 7:  We also do not consider whether the PILOT in this case would constitute a general or special tax if it does not reflect the reasonable cost to provide electric service.  (Art. III C, § 2, subds. (c) & (d).)

This modification does not change the judgment.

The petitions for rehearing are denied.

    MAURO    , Acting P.J.


    HOCH    , J.

Filed 1/20/15 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| CITIZENS FOR FAIR REU RATES et al., | |
| Plaintiffs and Appellants, | C071906 |
| v. | (Super. Ct. Nos. 171377, 172960) |
| CITY OF REDDING et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Shasta County, William D. Gallagher, Judge. Reversed with directions.

McNeill Law Offices and Walter P. McNeill for Plaintiffs and Appellants.

Colantuono & Levin, Colantuono, Highsmith & Whatley, Michael G. Colantuono, Amy C. Sparrow and Michael R. Cobden for Defendants and Respondents

Braun Blaising McLaughlin Smith, C. Anthony Braun and Justin C. Wynne for California Municipal Utilities Association as Amicus Curiae on behalf of Defendants and Respondents; Jarvis, Fay, Doporto & Gibson, Benjamin P. Fay and Rick W. Jarvis for League of California Cities and the California State Association of Counties as Amicus Curiae on behalf of Respondent, City of Redding.

California voters adopted Proposition 13 in 1978 (Cal. Const., art XIII A, added by Prop. 13, as approved by voters, Primary Elec., June 6, 1978)[1] to require -- among other constitutionally implemented tax relief measures -- that any "special taxes" for cities, counties, and special districts be approved by two-thirds of voters. (Art. XIII A, § 4.) In 1996, voters adopted Proposition 218 (art. XIII D, added by Prop. 218, as approved by voters, Gen. Elec., Nov. 5, 1996 (Proposition 218)), with one of its aims being "to tighten the two-thirds voter approval requirement for 'special taxes' and assessments imposed by Proposition 13." (*Brooktrails Township Community Services Dist. v. Board of Supervisors of Mendocino County* (2013) 218 Cal.App.4th 195, 197 (*Brooktrails*).) To this end, Proposition 218 added article XIII C to require that new taxes imposed by a local government be subject to two-thirds vote by the electorate. (Art. XIII A, § 4; art. XIII C, § 1, as approved by voters, Gen. Elec., Nov. 5, 1996; see also 2B West's Ann. Cal. Codes (2013) pp. 362-363.) Article XIII C was amended by the voters in 2010 when they passed Proposition 26. (Art. XIII C, § 1, amended by Prop. 26, as approved by voters, Gen. Elec., Nov. 2, 2010 (Proposition 26).)

Proposition 26 added subdivision (e) to section 1 of article XIII C, broadly defining "tax" to include "any levy, charge, or exaction of any kind imposed by a local government." (Art. XIII C, § 1, subd. (e).) Subdivision (e) incorporated seven exceptions to this definition of tax. (*Ibid.*) The second exception is the subject of this appeal and provides that "tax" does not include "[a] charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, *and which does not exceed the reasonable costs to the local government of providing the service or product.*" (Art. XIII C, § 1, subd. (e)(2), italics added.) Section 1 of article XIII C further provides that "[t]he local government bears the burden of

_____

[1] Undesignated references to articles are to the California Constitution.

2

proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (Art. XIII C, § 1 [last para.].)

This case calls us to consider whether Proposition 26 applies to a practice by the City of Redding (Redding) of making an annual budget transfer from the Redding Electrical Utility (Utility) to Redding's general fund. Because the Utility is municipally owned, it is not subject to a one percent ad valorem tax imposed on privately owned utilities in California. (Art. XIII, § 3, subd. (b), adopted by voters, Gen. Elec., Nov. 5, 1974.) However, the amount transferred between the Utility's funds and the Redding general fund is designed to be equivalent to the ad valorem tax the Utility would have to pay if privately owned. Redding describes the annual transfer as a payment in lieu of taxes (PILOT). The PILOT is not set by ordinance, but is part of the Redding biennial budget.

Plaintiffs in this case (Citizens for Fair REU Rates, Michael Schmitz, Shirlyn Pappas, and Fee Fighter LLC) challenge the PILOT on grounds it constitutes a tax for which article XIII C requires approval by two-thirds of voters. Redding responds the PILOT is not a tax, and if it is a tax, it is grandfathered-in because it precedes the adoption of Proposition 26.

We conclude the PILOT constitutes a tax under Proposition 26 for which Redding must secure two-thirds voter approval unless it proves the amount collected is necessary to cover the reasonable costs to the city to provide electric service. We reject Redding's assertion the PILOT is grandfathered-in by preceding Proposition 26's adoption. As a budget line item, the PILOT is subject to annual discretionary reauthorization by Redding's city council. The PILOT does not escape the purview of Proposition 26

3

because it is a long-standing practice.[2]  Because the trial court concluded the PILOT was reasonable as a matter of law, we reverse and remand for an evidentiary hearing in which Redding has the opportunity to prove the PILOT does not exceed reasonable costs under article XIII C, section 1, subdivision (e)(2).

BACKGROUND

***Redding's PILOT***

The facts of this case are undisputed.[3]  Redding owns a municipal utility to provide electric service for residents and commercial businesses within the city.  The Utility owns property to generate and transmit electricity.  This municipally owned property is not subject to taxation.  (See generally, art. XIII, § 3, subd. (b).)

In 1987, Redding's director of finance proposed a PILOT to transfer funds from the Utility to the city's general fund.  The director of finance noted 17 other cities regularly made PILOT transfers and a PILOT in Redding "would generate $1,531,622.45 for the General Fund."  However, the proposal included a cautionary statement contained in a legal advisory letter to the Northern California Power Agency, a consortium of municipal electric utilities including Redding's Utility.  The legal advisory letter concluded that so long as the internal fund transfer had a rational basis or was equal to or less than market rates, there was little risk of invalidation.  However, the letter also warned of "a real possibility that rates which produce revenues in excess of cost of

_____

[2]     PILOTs are not uncommon among California municipalities.  (See, e.g., *Howard Jarvis Taxpayers Assn. v. City of Fresno* (2005) 127 Cal.App.4th 914, 917 (*Fresno*) [noting PILOTs used in Fresno since 1957 charter provision and 1967 ordinance].)  We do not consider or address the validity of any PILOT other than the one presented in this case.

[3]     Given the undisputed nature of the facts and sufficiency of the appellate record, we deny all pending motions for judicial notice.

4

service will require a two thirds vote of the affected electorate to be valid under Propositions 13 and 62, or that such excess revenues will be subjected to the expenditure limitations of Proposition 4."

Redding adopted the PILOT in 1988.

As noted above, California voters adopted Proposition 26 in the general election November 2, 2010. The next month, in December 2010, Redding passed a resolution (No. 2010-179) increasing electric rates by 7.84 percent effective January 2011, and an additional 7.84 percent effective December 2011. There is no line item in the electric bills sent to the Utility's customers that reflects the PILOT.

### *The First Action*

On February 4, 2011, plaintiffs filed a petition for writ of mandate and complaint for declaratory and injunctive relief. Plaintiffs' first petition and complaint focused on Resolution No. 2010-179, which the Redding City Council passed in December 2010 to increase the Utility's rates. One of the stated purposes for the Resolution was "to obtain funds necessary to maintain such intra-City transfers as authorized by law." Plaintiffs alleged the new rates incorporated the PILOT charge (about $6,000,000), which did not reflect "any particular costs or expenses incurred" to provide electric service, but was "purely extra revenue." They alleged that because the PILOT was an invalid tax, the rate increase calculated based on the PILOT was also invalid. Plaintiffs asserted the PILOT is an unlawful tax that is "in excess of the reasonable cost of providing services, due to the unlawful incorporation of the PILOT charge and transfer to [Redding]'s general fund."

Redding demurred, raising three general claims: First, Proposition 26 was not retrospective and therefore did not apply to any aspect of the PILOT charge; second, utility rates were not "imposed" because anybody was free to provide their own electricity rather than pay the Utility for a supply; third, a utility charge was not a "tax"

5

within the meaning of Proposition 62.[4] The trial court denied the demurrer and the case proceeded to a bench trial.

The trial court denied the first petition based on its conclusion the PILOT charge predated and therefore was immune from a Proposition 26 challenge. "The PILOT was an established cost that was not increased or affected by the adoption of Resolution 2010-179 [raising rates]. As the rate increases did not increase the PILOT, the Court finds that the Resolution did not impose or increase any tax, and therefore did not require voter approval."

### *The Second Action*

On August 29, 2011, plaintiffs filed a second complaint, seeking a declaration that a new two-year budget adopted on June 22, 2011, violated Proposition 26. The Redding City Council passed Resolution No. 2011-111 to adopt the biennial budget for the fiscal years ending June 30, 2010, and June 30, 2011. The Resolution explains that "the City Council has approved continuation of the PILOT in every budget since 1988-89. Upon adoption of the [fiscal year] 1992-1993 budget, the City Council amended the PILOT to include the value of capital improvement projects undertaken during the budget year in the asset base to which the 1% [PILOT] is applied. Upon adoption of the [fiscal year] 2002-2003 budget, the City Council further revised the PILOT to adjust the value of assets for inflation in the calculation of the PILOT. Upon adoption of a two-year budget in June 2005, the City Council amended the PILOT into its current form by including the value of joint-venture assets in which [the Utility] has a share in the asset base to which the 1% [PILOT] is applied. The City's practice is to estimate the value of the assets over

_____

[4] Proposition 62 "is a statutory initiative adopted by the voters at the 1986 General Election. It added a new article to the Government Code (§§ 53720–53730) requiring that all new local taxes be approved by a vote of the local electorate." (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 231.)

6

the life of a two-year budget and to calculate the PILOT based on that estimate and to correct any variance between the PILOT calculated for the last two-year budget and the actual asset value experienced in that time. Estimates are necessary because the PILOT formula: (i) includes capital projects to be completed in the two future years covered by a [PILOT] and (ii) uses an estimate of inflation during that time." Thus, Redding's biennial budget incorporated "a marked increase" in the PILOT that was "due to the addition of the Unit Six generator . . . ."

### *Consolidation and Trial Court Decision*

By stipulation, the trial court consolidated the two actions. The trial court then issued a memorandum of decision in favor of Redding. The trial court concluded the PILOT transfer was not a new, increased, or extended tax under Proposition 26, and therefore was grandfathered-in. After reaching this conclusion, the trial court went on to address additional issues. In this part of the decision, the trial court also found that "even if" the PILOT fell within Proposition 26's ambit, it could reasonably be argued the PILOT reflected a reasonable cost of providing electric service.

Plaintiffs timely appealed from the ensuing judgment for Redding.

### DISCUSSION

### I

### *Proposition 26's Application to Redding's PILOT*

We begin by considering whether the PILOT constitutes a tax under Proposition 26. If the PILOT is not a tax under Proposition 26, there is no need to consider whether it is grandfathered-in. Plaintiffs contend the PILOT is a tax because it is not based on any calculation of reasonable costs to Redding for providing electric service. In support, plaintiffs note the PILOT is intended to replicate the tax that would be imposed if the Utility were privately owned.

7

## A.

### *Standard of Review*

The question of "whether impositions are 'taxes' or 'fees' is a question of law for the appellate courts to decide on independent review of the facts." (*Sinclair Paint Co. v. State Bd. of Equalization* (1997) 15 Cal.4th 866, 874 (*Sinclair Paint*).) Consequently, our review affords no deference to the trial court's conclusions of law. We are, however, not rudderless in our inquiry into the applicability of Proposition 26 to the PILOT in this case. Instead, we aim to construe Proposition 26 to discern the intent of the voters who adopted the initiative. " 'In interpreting a voter initiative . . . , we apply the same principles that govern statutory construction. (See *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276 (*Horwich*).) Thus, "we turn first to the language of the statute, giving the words their ordinary meaning." (*People v. Birkett* (1999) 21 Cal.4th 226, 231 (*Birkett*).) The statutory language must also be construed in the context of the statute as a whole and the overall statutory scheme [in light of the electorate's intent]. (*Horwich, supra*, 21 Cal.4th at p. 276, [280].) When the language is ambiguous, "we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet." (*Birkett, supra*, 21 Cal.4th at p. 243.)' (*People v. Rizo* (2000) 22 Cal.4th 681, 685 (*Rizo*).) [¶] In other words, our 'task is simply to interpret and apply the initiative's language so as to effectuate the electorate's intent.' (*Hi–Voltage Wire Works, Inc. v. City of San Jose* (2000) 24 Cal.4th 537, 576 (*Hi–Voltage*) (conc. & dis. opn. of George, C.J.).)" (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900-901.)

## B.

### *Taxes, Fees, and Exceptions under Proposition 26*

Determining whether a levy, charge, or exaction qualifies as a tax or fee often presents a subtle question. As the California Supreme Court has observed, "cases recognize that 'tax' has no fixed meaning, and that the distinction between taxes and fees

8

is frequently 'blurred,' taking on different meanings in different contexts.  (*Russ Bldg. Partnership v. City and County of San Francisco* [(1987)] 199 Cal.App.3d [1496,] 1504; *Terminal Plaza Corp. v. City and County of San Francisco* (1986) 177 Cal.App.3d 892, 905; *Mills v. County of Trinity* (1980) 108 Cal.App.3d 656, 660; *County of Fresno v. Malmstrom* (1979) 94 Cal.App.3d 974, 983–984.)  In general, taxes are imposed for revenue purposes, rather than in return for a specific benefit conferred or privilege granted.  (*Shapell Industries, Inc. v. Governing Board* (1991) 1 Cal.App.4th 218, 240; *County of Fresno v. Malmstrom, supra*, 94 Cal.App.3d at p. 983 ['Taxes are raised for the general revenue of the governmental entity to pay for a variety of public services'].)  Most taxes are compulsory rather than imposed in response to a voluntary decision to develop or to seek other government benefits or privileges.  (*Shapell Industries, Inc. v. Governing Board, supra*, 1 Cal.App.4th at p. 240; *Russ Bldg. Partnership v. City and County of San Francisco, supra*, 199 Cal.App.3d at pp. 1505–1506; see *Terminal Plaza Corp. v. City and County of San Francisco, supra*, 177 Cal.App.3d at p. 907.)  But compulsory fees may be deemed legitimate fees rather than taxes.  (See *Kern County Farm Bureau v. County of Kern* (1993) 19 Cal.App.4th 1416, 1424.)"  (*Sinclair Paint*, *supra*, 15 Cal.4th at p. 874.)

In contrast to taxes that serve to raise general revenue, fees " 'do not exceed the reasonable cost of providing services necessary to the activity for which the fee is charged and which are not levied for unrelated revenue purposes.' "  (*Apartment Assn of Los Angeles County, Inc. v. City of Los Angeles* (2001) 24 Cal.4th 830, 843, quoting *Sinclair Paint, supra*, 15 Cal.4th 866, 876 [collecting authority].)  A levy, charge, or exaction cannot be considered a fee if "the amount of the fees [bears] no reasonable relationship to the social or economic 'burdens' its operations generated."  (*Apartment Assn, supra,* at p. 881.)

9

The issue of whether the PILOT in this case constitutes a tax or a fee arises only after the adoption of Proposition 26 because Proposition 218 previously excluded fees for gas and electrical service from the voter approval requirement. (Compare art. XIII C, § 1, subd. (e) [definition of "tax" to include "*any* levy, charge, or exaction of any kind imposed by a local government" added by Proposition 26, italics added], with art. XIII D, § 3, subd. (b) [Proposition 218's exemption of electrical and gas service from its provisions].)

Proposition 26 was intended to address taxes disguised as fees. As pertinent to this case, Proposition 26's findings and declaration of purpose state: "Since the enactment of Proposition 218 in 1996, the Constitution of the State of California has required that increases in local taxes be approved by the voters. [¶] (c) Despite these limitations, California taxes have continued to escalate. . . . [¶] . . . [¶] (e) This escalation in taxation does not account for the recent phenomenon whereby the Legislature and local governments have disguised new taxes as 'fees' in order to exact even more revenue from California taxpayers without having to abide by these constitutional voting requirements. Fees couched as 'regulatory' but which exceed the reasonable costs of actual regulation or are simply imposed to raise revenue for a new program and are not part of any licensing or permitting program are actually taxes and should be subject to the limitations applicable to the imposition of taxes. [¶] (f) In order to ensure the effectiveness of these constitutional limitations, this measure . . . defines a 'tax' for state and local purposes so that neither the Legislature nor local governments can circumvent these restrictions on increasing taxes by simply defining new or expanded taxes as 'fees.' " (Prop. 26, § 1, subds. (b), (c), (e), (f), reprinted at Historical Notes, 2B West's Ann. Cal. Codes (2013) foll. art. 13A, § 3, pp. 296-297; see also *Roseville*, *supra*, 97 Cal.App.4th at p. 645, fn. 17 [noting courts may use ballot summary, arguments, and analysis to construe voter-approved initiatives].)

10

In short, the question of whether Redding's PILOT constitutes a tax under Proposition 26 turns on whether the PILOT serves to raise general revenue or reflects the reasonable costs to the city to provide electric service.

More specifically, for purposes of this case, whether the PILOT constitutes a tax within the meaning of section 1, subdivision (e), of article XIII C turns on whether the exception in article XIII C, section 1, subdivision (e)(2), applies. This exception asserted by Redding pertains to "[a] charge imposed for a specific government service or product provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of providing the service or product." The adoption of Proposition 26 shifted the burden of proof regarding the exception's applicability to the local government. (Art. XIII C, § 1, [last para.]) The last paragraph of article XIII C, section 1, provides: "The local government bears the burden of proving by a preponderance of the evidence that a levy, charge, or other exaction is not a tax, that the amount is no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity."

## C.

### *Redding's PILOT*

Because the Utility is municipally owned, Redding imposes the PILOT to collect the same amount as would be due under the ad valorem tax on privately owned utilities. Throughout its history, the PILOT has been measured against the ad valorem tax. The PILOT has been adjusted to keep it equivalent to the ad valorem tax. It has not been designed to approximate the reasonable costs of providing electric service in Redding.

The PILOT is calculated as a flat percentage of the Utility's assets. As a flat percentage, the PILOT in this case resembles the in-lieu payment reviewed by this court

11

in *Howard Jarvis Taxpayers Assn v. City of Roseville* (2002) 97 Cal.App.4th 637 (*Roseville*).  In *Roseville*, we considered a challenge to an in-lieu payment at a flat four percent of the annual budgets of three of Roseville's municipal utilities that provided water, sewer, and garbage collection.  (*Id.* at p. 648.)  In considering the constitutional validity of the in-lieu payment, we acknowledged that "[o]f course," the city could recoup "what it costs to provide such services includ[ing] all the required costs of providing service, short-term and long-term, including operation, maintenance, financial, and capital expenditures."  (*Id.* at pp. 647-648.)  Even so, we concluded the "fee does not represent costs.  It is a flat fee.  It is imposed on the utilities' budgets, presumably after their total costs have been accounted for in the budget process.  If the budget of a utility increases because of a cost increase unrelated to the in-lieu fee, the in-lieu revenues, as a flat percentage of that increased budget, increase as well.  The in-lieu fee is the same percentage applied to each budget, regardless of varying uses of streets, alleys and rights-of-way by the individual utilities.  It cannot be said that this flat fee on budgets coincides with these costs."  (*Id.* at p. 648.)  Like the in-lieu payment at issue in *Roseville*, Redding's PILOT is a flat percentage of the Utility's assets.

The revenues generated by the PILOT are transferred to Redding's general fund.  In *Roseville*, the in-lieu payment violated Proposition 218 because the " '[r]evenue from the in[-]lieu franchise fee is 'placed in [Roseville's] general fund to pay for general governmental services.  It has not been pledged, formally or informally[,] for any specific purpose.' "  (*Id.* at p. 650.)  This practice ran "afoul of section 6(b)(2) that '[r]evenues derived from the fee or charge shall not be used for any purpose other than that for which the fee or charge was imposed.'  It also contravene[d] section 6(b)(5) that '[n]o fee or charge may be imposed for general governmental services. . . .' "  (*Roseville,* at p. 650.)  Here, as in *Roseville*, the transfer of the in-lieu payment into the general fund provides

additional support for the conclusion that the payment constitutes a revenue-generating tax.

Redding argues Proposition 26 does not apply because the Utility's rates (including the PILOT component) are not "imposed." Redding reasons that "[e]ven if the PILOT were funded by [electric] rates, no force or authority is involved here -- those who wish to buy energy from [the Utility] pay the PILOT (and other costs argued to be funded by [the Utility's] service rates) only to the extent they use its service. Those who obtain energy in other ways do not. [There are] other alternatives to electric utility service (such as solar, water, wind and geothermal power) . . . ." The trial court rejected the argument, pointing out that while "legally [the Utility] has no monopoly as an electric utility, the reality is that for many people there are no economically viable alternatives. The Court used the example of a tenant who is renting a house or apartment that is served by [the Utility]. While theoretically possible that a tenant who does not wish to use [the Utility] could install an alternate power source, that is simply not a realistic option." We agree. A tax does not lose its revenue-generating character because there is a theoretical but unrealistic way to escape from the tax's purview. The PILOT was imposed under Redding's authority to generate revenue for its general fund.

We also reject Redding's argument that the PILOT was never "imposed" by "force or authority" because the one percent levy was collected in customer bills for electric service. For guidance, we turn to the instructive case of *Howard Jarvis Taxpayers Assn v. City of La Habra* (2001) 25 Cal.4th 809, 823 (*La Habra*). In *La Habra*, the California Supreme Court considered the question of when a tax on utility rates is "imposed." (*Id.* at p. 818.) The city argued the tax was not imposed until the voters approved the levy. (*Id.* at pp. 817-818.) The Supreme Court rejected the proposition that "when a city disregards the approval requirement in imposing a tax, the imposition has never happened and thus may not be challenged." (*Id.* at p. 818.) The *La Habra* court held Proposition

62, which added voter-approval requirements for local taxes, "prohibited the imposition of a general tax 'unless and until such general tax is submitted to the electorate.' (Gov. Code, § 53723.) That command is allegedly violated *each time the City collects its utility tax through the service providers*." (*La Habra*, at p. 823, italics added.) The same reasoning applies here. That the PILOT in this case may be collected through electric service bills does not by itself render Proposition 26 inapplicable.

Redding next argues the PILOT "is a pre-existing legal obligation of [the Utility] and could therefore be funded from rates."[5] In support, Redding notes the Utility's "non-retail revenue is more than three times the amount of the PILOT." This argument seemed to be persuasive to the trial court, which concluded the Utility "has non-rate revenues that exceed the amount of the PILOT, therefore, there is no evidence that the PILOT is paid out of customer's rates." We reject this reasoning. That the Utility has other sources of income is not dispositive. The gravamen of the problem is that, regardless of what else Redding might collect from certain customers, it has imposed a PILOT -- which it may do only with voter approval or if able to show it reflects Redding's reasonable costs of providing electric service.

The PILOT is also not saved from being a disguised tax simply because it is not separately listed on the Utility customers' electric bills. A municipal payment in lieu of taxes was held to violate Proposition 218 even though the in-lieu payment was not separately listed in the utility bills challenged in *Howard Jarvis Taxpayers Assn v. City of Fresno* (2005) 127 Cal.App.4th 914. *Fresno* involved a taxpayer lawsuit that focused on the rates charged by the city's municipal utilities. (*Id.* at p. 917.) By ordinance, the City of Fresno "required each municipal utility to 'pay to the City, in lieu of property and

_____

[5]     We address the issue of whether the PILOT precedes the adoption of Proposition 26 in part II, *post*.

14

other taxes normally placed upon private business,' an amount designated by the council in a master fee resolution. (Fresno Mun. Code, § 4–803.) The fee [was] 1 percent of the assessed value of fixed assets of the utility department or division." (*Id.* at p. 917.) "The overall amount of the in lieu fee [was] 'blended' into the user fees (in a manner not disclosed by the record), so that, for example, a water bill contain[ed] only a single amount due for service; the pass-through of the in lieu fee [was] not separately reflected on the bill. According to the budget of Fresno for the fiscal year 2003–2004 . . . in lieu fees var[ied] as a percentage of the utility divisions' operating budgets, ranging up to 9 percent of the water division's budget and 11 percent of the wastewater division's budget." (*Id.* at p. 918.) The *Fresno* court noted even after Proposition 218, "[c]ities are still entitled to recover all of their costs for utility services through user fees." (*Id.* at p. 922.) "The manner in which they may do so, however, is restricted by another portion of Proposition 218: 'The amount of a fee or charge imposed . . . shall not exceed the proportional cost of the service attributable to the parcel.' (Art. XIII D, § 6, subd. (b)(3).)" (*Fresno,* at pp. 922-923.) Thus, the *Fresno* court held the city needed to "reasonably determine" the "unbudgeted costs of utilities enterprises and that those costs be recovered through rates proportional to the cost of providing service to each parcel" if it chose to charge the in-lieu payment. (*Id.* at p. 923.) In so holding, the *Fresno* court recognized: "Undoubtedly this is a more complex process than the assessment of the in lieu fee and the blending of that fee into the rate structure. Nevertheless, such a process is now required by the California Constitution." (*Id.* at p. 923.)

Despite Redding's insistence it could cover the PILOT costs with non-retail income, the city protests the PILOT is necessary to comply with such costs to the Utility as green power mandates (Pub. Util. Code, § 2854), other renewable energy mandates (*id.* at §§ 399.11, 739.2 & 739.4), and Redding's "pre-Proposition 26 policy requiring discounted power for low-income and senior households." Nothing in Proposition 26

15

prevents the Utility from recouping its expenses. To the contrary, Proposition 26 expressly excepted from the definition of taxes any charge that "does not exceed the reasonable costs to the local government of conferring the benefit or granting the privilege." (Art. XIII C, § 1, subd. (e)(1).) Neither Redding nor its Utility is restrained from recovering the reasonable costs of electricity production and distribution.

Nor is the Utility required to charge a flat rate to all customers to prevent discounted power to low-income and senior households. Variable rate plans, such as for municipal delivery of water, have been upheld against challenge under Proposition 13. (*Brydon v. East Bay Mun. Utility Dist*. (1994) 24 Cal.App.4th 178.) In *Brydon*, a municipal water district imposed a variable rate structure for which the price increased with consumption. This price "structure of the District [was] a response to state mandated water resource conservation requirements." (*Id.* at p. 192.) Even though a rate varied among customers, the *Brydon* court rejected a challenge to the increased payment for greater consumption as a tax for which voter approval was necessary. *Brydon* holds the voter approval requirement "does not apply to every regulatory fee simply because, as applied to one or another of the payor class, the fee is disproportionate to the service rendered." (*Id.* at p. 194.) Thus, the fact that customers of the Utility in this case might pay more because of renewable energy mandates, or some rates might subsidize low-income households, does not violate Proposition 26. However, Proposition 26 prohibits the PILOT from increasing the bill of customers by the same amount as the ad valorem tax on private utilities without voter approval or showing it reflects reasonable costs to the city.

Accordingly, we conclude the PILOT constitutes a tax under Proposition 26 unless Redding proves the amount collected is necessary to cover the reasonable costs to the city to provide electric service. (Art. XIII C, § 1, subd. (e).) We consider whether any portion of the "reasonable costs" exception provided by article XIII C, section 1,

16

subdivision (e)(2), exempts the PILOT from the voter approval requirement for taxes in part III, *post*.

## II

### *Whether Redding's PILOT is "Grandfathered-in"*

We turn to the question of whether the PILOT preexisted the adoption of Proposition 26. Proposition 26 has no retrospective effect as to local taxes that existed prior to November 3, 2010. (*Brooktrails, supra,* 218 Cal.App.4th at pp. 205-207.) However, the parties disagree on whether the PILOT in this case existed prior to the adoption of Proposition 26. Redding contends the PILOT is a set fixture of the Redding budget that is grandfathered-in, i.e., escapes the applicability of Proposition 26 as a preexisting levy. Plaintiffs respond the PILOT is a component of the electric rates that is transferred to the general fund in Redding's biennial budget and is subject to recurring discretionary adoption and adjustment. As we explain, the PILOT may be a familiar part of the Redding biennial budget, but it has not been fixed by ordinance or any other authority. Being subject to the Redding City Council's recurring discretion, it is not grandfathered-in under Proposition 26.

### A.

### *The Trial Court's Retroactivity Finding*

There is no dispute the PILOT has not been implemented by ordinance or other law. Indeed, Redding explains that "City staff calculates the PILOT with each budget according to the formula adopted by the City Council. [Citations.] Because the formula relies on estimates, the PILOT is 'trued up' with the adoption of the budgets in odd-numbered years to correct estimates for the previous biennium."

Moreover, the formula itself is periodically adjusted. The trial court found the PILOT's formula has been "refined in 1992, 2002, and 2005." The most notable "refine[ment]" to the PILOT was made in the 2001-2003 budget to "bring it in line with

17

the State Board of Equalization property tax calculation methodologies." However, it appears undisputed that the PILOT has been adjusted to equate as nearly as practicable to the tax a private utility would have to pay Redding in ad valorem taxes.

Despite the period adjustments in the Redding budgeting process, the trial court dismissed plaintiffs' challenges on the rationale that the PILOT had been grandfathered-in. The trial court reasoned that "Proposition 26 was not intended to require an election every time a local government adopts a budget that includes pre-existing components so long as that budget does not impose new or increased fees or charges or change the manner in which those fees are calculated. The adoption of Resolution 2011-111 adopting the City of Redding's budget, that included the budget of REU and the PILOT does not impose, extend, or increase a tax, and Proposition 26 does not apply." (Fn. omitted.)

**B.**

***Adoption of PILOT in the Budgetary Cycle***

Each budget is a discretionary legislative act made by each city council. (See *Scott v. Common Council* (1996) 44 Cal.App.4th 684, 690-694; *County of Butte v. Superior Court* (1985) 176 Cal.App.3d 693, 698.) The broad legislative discretion with which a city council is imbued stands in contrast to a tax or fee fixed by ordinance. In this case, each PILOT transfer represented a readoption in the discretion of each city council. Indeed, the record shows changes to the method of calculating the PILOT were made in 1992, 2002, and 2005. Consequently, the PILOT cannot be deemed to be grandfathered-in as preceding the 2010 adoption of Proposition 26. (Cf. *Barratt American Inc. v. City of Rancho Cucamonga* (2005) 37 Cal.4th 685 [discussing the "reenactment rule" in a different statutory context]; *Arcadia Development Co. v. City of Morgan Hill* (2008) 169 Cal.App.4th 253, 262-266; see also *La Habra, supra,* 25 Cal.4th at p. 825 ["Cities and counties must eventually obey the state laws governing their taxing

authority and cannot continue indefinitely to collect unauthorized taxes"]; *Advance Medical Diagnostic Laboratories v. County of Los Angeles* (1976) 58 Cal.App.3d 263, 269 [longtime government custom "even if conducted in the best of faith will not make legal what is illegal"].)

The PILOT's regular appearance in Redding's budgetary process does not mean it was a permanent or continuing transfer compelled by ordinance or other non-discretionary authority. As a recurring discretionary part of the Redding biennial budget, the PILOT cannot be said to precede or be grandfathered-in under Proposition 26. And, the PILOT also cannot be said to be the product of legislation for which Proposition 218 provided a savings clause to allow "fees and charges" to be brought into compliance by a certain date. Although Propositions 26 and 218 stand in pari materia -- namely they relate to the same subject (*People v. Honig* (1996) 48 Cal.App.4th 289, 327) -- nothing in either statute grandfathers in the PILOT simply because it has been a customary recurrence in the Redding municipal budget.

As to the two-year budget adopted by Redding on June 11, 2009, we conclude the included PILOT was grandfathered-in because budget adoption preceded the voters' approval of Proposition 26.[6] Even though the PILOT in the 2009-approved Redding budget did not expire until 2011, the PILOT for this budget was not subject to Proposition 26. To the extent Redding continued to collect the PILOT *as authorized in 2009*, Redding does not need to cost justify the PILOT. Nonetheless, the December 7, 2010 increase of the PILOT by Redding does require cost justification under Proposition 26. Rather than being the continuation of a grandfathered-in rate, the December 2010

_____

[6]     Proposition 26 took effect on November 3, 2010, the day after being approved by the voters. (*Brooktrails, supra,* 218 Cal.App.4th at p. 205; 2B West's Ann. Cal. Codes (2013), Credits foll. art. XIII C, § 1, at p. 363.)

19

increase of the PILOT constitutes a tax under Proposition 26 unless Redding proves the amount collected represents its reasonable costs to provide electric service. Thus, Redding must cost justify the PILOT collected under the 2009 two-year Redding budget to the extent that additional funds were collected based on the December 7, 2010 rate increase.

The PILOT included in the two-year budget adopted by Redding on June 22, 2011, was not grandfathered-in because it was adopted after Proposition 26 became effective in 2010.

## III

### *Is Redding's Pilot a Reasonable Cost?*

Proposition 26 gives the local government the opportunity to prove the levy, charge, or exaction amounts to "no more than necessary to cover the reasonable costs of the governmental activity, and that the manner in which those costs are allocated to a payor bear a fair or reasonable relationship to the payor's burdens on, or benefits received from, the governmental activity." (Art. XIII C, § 1 [last para.].) Consequently, we turn to the issue of whether the PILOT reflects Redding's reasonable costs of providing electrical service.

### A.

### *Trial Court Decision*

Although Redding is entitled to prove the PILOT reflects only reasonable costs of electric service (Art. XIII C, § 1, subd. (e)), the question arises whether that factual issue has been resolved in this case. We requested supplemental briefing to clarify a portion of the trial court's decision that seemingly makes the finding the PILOT reflected a reasonable cost of providing electric service.

The pertinent portion of the trial court decision falls under the heading, "Additional Issues" for which the court explained: "While not essential to the analysis

20

and the above conclusion [that grandfathering exempted the PILOT from Proposition 26's purview], the Court finds that the following comments warrant inclusion in a discussion of the issues that came before the Court." Among these, the trial court included a discussion of whether the PILOT reflected the reasonable costs to Redding for providing electric service. The trial court stated:

"Even if the PILOT were part of the utility rates charged to ratepayers, it could reasonably be argued that the PILOT is part of the costs of providing the service. All business enterprises have costs and expenses that are a cost of doing business or a cost of providing the service or product. All businesses are required to pay taxes. Here, the City had the foresight to own and operate its own electric utility. As a result, [Redding] has utility rates that are comparatively lower than many others in the state. If there was a private company providing electric service, that company would be required to pay taxes to [Redding] for the services and benefits [Redding] provides. That expense could be passed on to customers as a cost of providing the service and product, and would not be subject to voter approval. The private utility could charge whatever rates it desired. Requiring [Redding] to put its electric rates out to vote every time a rate increase is necessary (because the rates include items that arguably are not 'directly related' to the cost of providing electricity) cannot reasonably be deemed to be an intended consequence of Proposition 26."

**B.**

***Reasonable Cost to Redding?***

Undoubtedly, Redding incurs costs to provide infrastructure and support to the Utility. For example, Redding police protect the Utility property and the Utility's workers. Redding's streets, used by the Utility in its operations, are built and maintained by Redding's general fund. Redding's fire department stands ready to respond if a Utility transformer sparks a fire, or a downed tree cuts a live utility line, endangering Redding's

21

citizens. The trial court's exploration of the issue of reasonable costs constitutes a conclusion of law rather than a finding of fact. Rather than finding the costs incurred by Redding to provide electric service, the trial court determined the Utility's comparatively low rates necessarily mean the PILOT passes constitutional muster under Proposition 26. We reject this legal conclusion.

We also reject the assertion made by Redding at oral argument that a 1999 letter supplies the facts necessary to determine whether the PILOT reflects the reasonable costs to Redding for providing electric service. The letter was sent by an independent consultant to the director of the Utility to recommend that the PILOT calculation methodology not be changed to lower the amount transferred to Redding's general fund. The consultant's conclusion largely rested on a survey of rates charged by other municipal utilities rather than any examination of costs incurred by Redding in providing electric service. Indeed, Redding conceded that no cost of service analysis has been conducted to determine the reasonable cost of providing electric service.

We disagree with Redding's assertion, in its supplemental brief, that the PILOT comports with Proposition 26 because Redding's electric rates are lower than those paid by others in California. Even if Redding's rates were the lowest in California, Proposition 26 would nonetheless require the PILOT to either reflect the city's reasonable cost of providing electric service or be approved by two-thirds of voters. An unconstitutional tax is not rendered lawful simply by being bundled with otherwise reasonable utility rates.

We decline Redding's invitation to engage in a fact-finding mission to determine whether the administrative record contains enough evidence to cost justify the PILOT for purposes of Proposition 26. As we have explained, the trial court's conclusion that the PILOT passes constitutional muster because the PILOT is equivalent to the ad valorem tax rate applicable to private utilities constitutes a conclusion of law. The possibility that

22

non-rate revenues exceed the PILOT does not satisfy Proposition 26's requirement that Redding demonstrate the collected tax reflects the reasonable costs of providing electric service. So too, Redding's argument that the Utility's electricity rates are "reasonable" does not prove the PILOT bears a reasonable relationship to the costs of service.

Redding misses the mark when it asserts the administrative record shows that "the December 2010 rates do not exceed the cost of providing electric service to [Utility's] customers." In support, Redding asserts the fairness of the rate-making process and the participation of appellants' counsel in the rate-making process. The fairness of the rate-making process, however, does not address whether the amount of the PILOT reasonably reflected Redding's service costs. Tellingly, Redding cites to public comments in the rate making process rather than any cost study by Redding that shows the dollar amounts expended to provide electricity generation or distribution.

Because findings of fact are the unique province of the trial court, we are unable to supply the factual findings necessary to uphold the PILOT as a reasonable cost under Proposition 26. Our conclusion "reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law. . . .' " (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, quoting *Tupman v. Haberkern* (1929) 208 Cal. 256, 262–263.)

Perhaps the PILOT reflects Redding's reasonable cost to provide electric service. However, this factual question has not yet been properly determined by the trial court. The question of whether a particular levy, charge, or exaction reflects a "reasonable cost" to the local government requires a factual rather than legal answer. (*Mills v. County of Trinity* (1980) 108 Cal.App.3d 656, 663 (*Mills*).)

In *Mills*, this court considered whether the two-thirds voter approval requirement applied to fees for county services in processing subdivision, zoning, and other land-use applications. (108 Cal.App.3d at pp. 658-659.) *Mills* held that "the 'special tax' referred

23

to in section 4 of article XIII A does not embrace fees charged in connection with regulatory activities which fees do not exceed the reasonable cost of providing services necessary to the activity for which the fee is charged and which are not levied for unrelated revenue purposes." (*Id.* at p. 659.) We explained that "[s]ince the trial court held the fees imposed by [the county's charges] constitute a 'special tax' as a matter of law, the factual question whether or not such fees exceed the reasonable cost of the related regulatory activity has never been litigated. On remand that issue must be tried." (*Id.* at p. 663.) Accordingly, the disposition in *Mills* was to "reverse and remand for a factual determination of whether the fees in question are reasonably compensatory for the costs occasioned by the regulated activities." (*Id.* at p. 660.)

In *Sinclair Paint, supra*, 15 Cal.4th 866, the California Supreme Court likewise held reversal and remand was necessary " 'for a factual determination of whether the fees in question are reasonably compensatory for the costs occasioned by the regulated activities.' " (*California Assn. of Professional Scientists v. Department of Fish & Game* (2000) 79 Cal.App.4th 935, 947.) In *Sinclair Paint*, the Supreme Court concluded that "Sinclair should be permitted to attempt to prove at trial that the amount of fees assessed and paid exceeded the reasonable cost of providing the protective services for which the fees were charged, or that the fees were levied for unrelated revenue purposes. [Citation.] Additionally, Sinclair will have the opportunity to try to show that no clear nexus exists between its products and childhood lead poisoning, or that the amount of the fees bore no reasonable relationship to the social or economic 'burdens' its operations generated." (*Sinclair Paint, supra*, 15 Cal.4th at p. 881.)

Following *Mills* and *Sinclair Paint*, we determine remand is necessary to allow the trial court to determine the factual question of whether the PILOT reflects the reasonable

24

costs borne by Redding to provide electric service.[7]  (See *California Farm Bureau Federation v. State Water Resources Control Bd.* (2011) 51 Cal.4th 421, 446 [remand for findings].)

## DISPOSITION

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.  Plaintiffs (Citizens for Fair REU Rates, Michael Schmitz, Shirlyn Pappas, and Fee Fighter LLC) shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

      HOCH     , J.

I concur:

    MAURO    , Acting P. J.

_____

[7]    Given our conclusion, it would be premature to consider the question of remedy for improperly collected taxes in violation of Proposition 26.  (See Gov. Code, § 53728.)

DUARTE, J., Dissenting

The majority opinion requires *every municipal utility* that is charged a payment in lieu of taxes (PILOT), with the insignificant exception of those utilities, if any, that pay PILOTS pursuant to a pre-Proposition 26 ordinance, to prove at a trial the exact cost of providing fire, police, sanitation, streets, and other municipal services, no doubt with competing accounting, municipal finance, and other experts. This result is disruptive, uncertain, and chaotic, and, in my view, is not compelled by Proposition 26 (as approved by voters, Gen. Elec., Nov. 2, 2010).

The resulting disruption will be widespread; I note that amici curiae in support of Redding include the League of California Cities, the California State Association of Counties, and the California Municipal Utilities Association (CMUA).[1]

I perceive this result as unwarranted because, in my view, a PILOT such as Redding's--which actually conforms to the limitations set forth by Proposition 13 (as approved by voters, Primary Elect., June 6, 1987) and implementing laws that are designed to establish "fair" property tax rates--as a matter of law does not "exceed the reasonable costs to the local government of providing the service." (Cal. Const., art. XIII C, § 1, subd. (e)(2).) Therefore, it is not a "tax" as defined by Proposition 26.

Accordingly, I respectfully dissent.

_____

[1] CMUA electric utility members potentially impacted by the majority decision include the Cities of Alameda, Anaheim, Azusa, Banning, Burbank, Cerritos, Colton, Corona, Glendale, Gridley, Healdsburg, Hercules, Lodi, Lompoc, Los Angeles, Moreno Valley, Needles, Palo Alto, Pasadena, Pittsburg, Rancho Cucamonga, Redding, Riverside, Roseville, Santa Clara, Shasta Lake, Ukiah, and Vernon; also represented are the Imperial, Merced, Modesto, and Turlock Irrigation Districts; the Northern California Power Agency; Southern California Public Power Authority; Transmission Agency of Northern California; Lassen Municipal Utility District; Power and Water Resources Pooling Authority; Sacramento Municipal Utility District; the Trinity and Donner Public Utility Districts; the Metropolitan Water District of Southern California; and the City and County of San Francisco, Hetch Hetchy.

1

I agree with the majority that Redding's PILOT program is not grandfathered-in, and thus immune from a Proposition 26 challenge, because the PILOT is adopted by each successive city council during the biennial budget process. As the majority explains, this practice, however longstanding, is unlike an ordinance, and each council must consider the potential applicability of Proposition 26 when using the PILOT as one component during the process of setting electricity rates.[2] I also agree with the majority's rejection of Redding's claims that it does not "impose" the PILOT because some customers may be able to generate their own electricity.

I agree that the record does not contain evidence of the *exact* benefits conferred by Redding to its utility--benefits available equally to all other property owners who pay their taxes in conformity with Proposition 13 and related laws. My disagreement flows from the fact that a PILOT, by definition, is designed to equate to the property taxes the utility *would* pay, were it not a municipal utility. The PILOT is a "payment *in lieu* of taxes." (Italics added.) In this case, the trial court found Redding's PILOT budget transfer equated to what a private utility would pay in taxes. Indeed, plaintiffs themselves *pleaded* that Redding's PILOT equals "as closely as possible" the taxes a private utility would pay. Thus, Redding's PILOT equals what a private utility would pay in taxes.[3]

As I shall now explain, in my view, *any* PILOT, whenever adopted, is reasonable as a matter of law if it actually comports with Proposition 13 and implementing laws.

_____

[2] Although this conclusion is compelled by existing precedent, it seems clear Proposition 26 was not intended to apply to pre-existing municipal charges.

[3] Parts of plaintiffs' briefs appear to contest this, and they contested it at oral argument. However, the point is forfeited both because it contradicts their theory of the case (see *Panopulos v. Maderis* (1956) 47 Cal.2d 337, 340-341), and because they fail to set forth the facts in light of the proper standard of review (see *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881).

The trial court stated that because the PILOT equated to what a private utility would pay in taxes, its use in the periodic calculation of electric rates by Redding does not result in an unreasonable charge for providing electric service. In full, this part of the trial court's ruling reads as follows:

"There are many components of [a] rate payer's bill that are technically not directly related to the cost of providing electrical service. These include costs built in to cover programs mandated by law. It is not a reasonable interpretation of Prop 26 that voters intended that any time electric rates are set, this requires an election and voter approval of those portions of the electric rates.

"Even if the PILOT were part of the utility rates charged to ratepayers, it could reasonably be argued that the PILOT is part of the cost of providing the service. All business enterprises have costs and expenses that are a cost of doing business, including regulatory fees, taxes, and all other items that constitute overhead. These are passed on to customers through pricing and rates and are a cost of doing business or a cost of providing the service or product. All businesses are required to pay taxes. Here, the City of Redding had the foresight to own and operate its own electric utility. As a result . . . [i]t has utility rates that are comparatively lower than many others in the state. If there was a private company providing electric service, that company would be required to pay taxes to [Redding] for the services and benefits [Redding] provides. That expense would be passed on to customers as a cost of providing the service and product, and would not be subject to voter approval. The private utility could charge whatever rates it desired. Requiring [Redding] to put its electric rates out to vote every time a rate increase is necessary (because the rates include items that arguably are not 'directly related' to the cost of providing electricity) cannot reasonably be deemed to be an intended consequence of Proposition 26."

I make two preliminary observations about this ruling.

First, a private utility servicing Redding could *not* "charge whatever rates it desired" as the trial court suggested. The Public Utilities Commission (PUC) has broad regulatory authority, conferred by the California Constitution and relevant statutes. (See *Southern California Edison Co. v. Peevey* (2003) 31 Cal.4th 781, 792 (*Peevey*); 8 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, §§ 1099-1100, pp. 726-729.) "Statutorily, [the] PUC is authorized to supervise and regulate public utilities and to 'do all things . . . which are necessary and convenient in the exercise of such power and

3

jurisdiction' ([Pub. Util. Code,] § 701); this includes the authority to determine and fix 'just, reasonable [and] sufficient rates' ([*id*.,] § 728) to be charged by the utilities." (*Peevey*, *supra*, 31 Cal.4th at p. 792.) "In contrast, *publicly* owned municipal utilities are not regulated by the [PUC] or any other supervising agency [citations] in the absence of a legislative grant of authority . . . . Thus, it is the public entity itself which fixes utility rates pursuant to its independent legislative power." (*American Microsystems, Inc. v. City of Santa Clara* (1982) 137 Cal.App.3d 1037, 1042-1043 (*American Microsystems*).)

Importantly, however, the PUC *considers tax liability* when determining whether a private utility's proposed rates are just and reasonable. (See *Southern California Gas Co. v. Public Utilities Com.* (1979) 23 Cal.3d 470, 474 ["As taxes are part of a utility's cost of service, this expense is borne by the ratepayers"]; *City and County of San Francisco v. Public Utilities Com.* (1971) 6 Cal.3d 119, 122-131; *SFPP, L.P. v. Public Utilities Com.* (2013) 217 Cal.App.4th 784, 795-800.) Thus, although the trial court overstated the power of a private utility to set rates, that fact does not diminish the force of the trial court's point: A private utility would properly claim necessary taxes--including local property taxes assessed within the limits of Proposition 13 and implementing laws--as valid costs of service in its PUC rate-setting applications.

Second, although the trial court used the phrase "it could reasonably be argued" that Redding's PILOT was a valid cost of service, in context the trial court was not merely *hypothesizing* about reasonableness, it was *finding* reasonableness. Just prior to the quoted passage, the trial court stated that *if* the PILOT were the imposition, extension or increase of a tax, "the next issue to be decided" is whether the charges exceeded "the reasonable costs of providing" service. Then the trial court addressed the issue in detail, as fully quoted *ante*. Thus, I interpret this passage as an alternative or secondary finding by the trial court, not mere musings.

In my view, the trial court's finding is not a factual finding based on the evidence, but a legally-compelled finding. Under Proposition 26 a "tax" does *not* include: "A

4

charge imposed for a specific government service . . . provided directly to the payor that is not provided to those not charged, and which does not exceed the reasonable costs to the local government of providing the service . . . ." (Cal. Const., art. XIII C, § 1, subd. (e)(2).) Further, the local government must show "the amount is no more than necessary to cover the reasonable costs" and that "the manner in which those costs are allocated to a payor bear a *fair or reasonable* relationship" to the benefits received. (*Id.*, § 1, last par., italics added.) Thus Proposition 26 does not compel Redding to charge the utility the *least possible* amount for municipal services, nor to charge customers the *least possible* amount for electricity, as plaintiffs assert.

The electric rates set by Redding may be increased by the PILOT transfer, but that is only one factor the city council considers in setting rates. That is, an increase in the amount of the PILOT (e.g., through acquisition of new property by the utility) does not raise rates; rates are set by the city council. (See *American Microsystems*, *supra,* 137 Cal.App.3d at pp. 1042-1043.) Thus, the PILOT is not of itself a "levy, charge, or other exaction" (Cal. Const., art. XIII C, § 1, subd. (e)) *imposed on ratepayers*.

The question here is whether Redding, exercising its legislative discretion, may determine part of the reasonable costs of its utility to include an amount equal to what Redding would collect in taxes from an equivalent private utility, and consider this amount as "costs" when it considers the many factors that go into setting utility rates. I would answer the question "yes" as a matter of law.

A municipal budget ascertains "the amount of money which must be raised to conduct the affairs of the municipality for the ensuing fiscal year, so that the business of the municipality may be conducted on a balanced budget, and on sound business principles, and, as far as practicable, on the same basis that a successful private business is conducted." (15 McQuillin, Law of Municipal Corporations (3d ed. 2014) Budget Law, § 39:49, fns. omitted.) We have deemed it to be a "fundamental proposition . . . that the adoption of a budget is a legislative function." (*County of Butte v. Superior*

5

*Court* (1985) 176 Cal.App.3d 693, 698 (*Butte*); see *Scott v. Common Council* (1996) 44 Cal.App.4th 684, 690-694.) "The budgetary process entails a complex balancing of public needs in many and varied areas with the finite financial resources available for distribution among those demands. It involves interdependent political, social and economic judgments which cannot be left to individual officers acting in isolation; rather, it is, and indeed must be, the responsibility of the legislative body to weigh those needs and set priorities for the utilization of the limited revenues available." (*Butte*, *supra*, 176 Cal.App.3d at p. 699; see *Collier v. City and County of San Francisco* (2007) 151 Cal.App.4th 1326, 1345 [citing this passage of *Butte* with approval].)

Taxation is fundamental to municipal budgeting. Proposition 13--the foundation of future tax and appropriation initiatives, including Proposition 26--ensures "fair" property taxation. (Ballot Pamp., Primary Elect. (June 6, 1978) argument in favor of Prop. 13, p. 58; *id.*, rebuttal to argument against Prop. 3, p. 59, capitalization omitted.) Therefore, if the amount of a PILOT is consistent with Proposition 13 and implementing legislation, the PILOT perforce is fair and reasonable. Proposition 26 was not designed to allow the utility to use Redding's general civic services without paying its "fair share."

By requiring the utility to pay the same amount that a private utility would pay in taxes, Redding recoups the reasonable or--as stated by Proposition 13--"fair" costs incurred in providing electric service. This insures Redding operates "on sound business principles, and, as far as practicable, on the same basis that a successful private business is conducted." (15 McQuillin, *supra*, § 39:49; see also 12 McQuillin, *supra*, § 35:65 ["In setting rates, a city may take into consideration the fact that the property of the utility is not taxed and that other services furnished by the city, such as fire and police protection, are furnished without charge"].)

6

Accordingly, I would affirm the judgment in favor of Redding.


            DUARTE            , J.