Filed 4/5/23

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| RUSSELL CHARLES EARNEST, | C095602 |
| Plaintiff and Respondent, | (Super. Ct. No. 34-2020-80003566-CU-WM-GDS) |
| v. | |
| COMMISSION ON TEACHER CREDENTIALING et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Sacramento County, James P. Arguelles, Judge.  Affirmed.

Rob Bonta, Attorney General, Carl W. Sonne, Senior Assistant Attorney General, Andrew M. Steinheimer, Supervising Deputy Attorney General, and Kevin W. Bell, Deputy Attorney General, for Defendants and Appellants.

Jonathan Turner for Plaintiff and Respondent.

---

\*      Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I and II of the Discussion.

The Commission on Teacher Credentialing (Commission) and its Committee of Credentials (Committee) (collectively defendants) appeal from a judgment granting Russell Charles Earnest's petition for writ of mandate to set aside the Committee's disciplinary recommendation against him and to enjoin the Commission from acting on that recommendation. Defendants assert the trial court erred in finding: (1) Earnest was excused from exhausting his administrative remedies; and (2) the Committee lacked jurisdiction to conduct a formal review pursuant to Education Code[1] section 44242.5, subdivision (d). They further assert the trial court should have denied the petition under the doctrine of judicial restraint. We affirm.

In the unpublished portion of the opinion, we conclude all three factors outlined in *Coachella Valley* weigh in favor of excusing Earnest from exhausting his administrative remedies: There is a significant public interest in obtaining a definitive resolution as to the question concerning the Committee's jurisdiction; Earnest makes a strong and ultimately persuasive argument that the Committee acted in excess of its jurisdiction by pursuing a formal review; and we are satisfied that judicial intervention would not deprive us of the benefit of defendants' administrative expertise. (*Coachella Valley Mosquito & Vector Control Dist. v. California Public Employment Relations Bd*. (2005) 35 Cal.4th 1072, 1082 (*Coachella Valley*).) We further find defendants' judicial restraint argument unavailing.

In the published portion of the opinion, we interpret the language of section 44242.5, subdivision (b)(3). Although section 44242.5, subdivision (b)(3) generally provides a jurisdictional basis for the Committee to commence initial reviews, as discussed *post*, the provision is also incorporated in section 44242.5, subdivision (d)(3) to provide a jurisdictional basis for the Committee to commence formal reviews. It was this

---

[1] Unless otherwise specified, all further statutory references are to the Education Code.

jurisdictional provision the Committee relied upon in commencing a formal review of Earnest's fitness to hold a credential.

Section 44242.5, subdivision (b)(3) provides, inter alia and pertinent to this appeal, that the Committee has jurisdiction to commence a formal review of a credential holder's fitness to hold a credential upon receipt of a statement from an employer notifying the Commission that, as a result of an allegation of misconduct, the employer took an enumerated adverse employment action or the employee resigned or otherwise left employment (notifying statement). The question presented is whether, if an employer determines the circumstances do not meet the requirements for providing a notifying statement, the Committee may later interpret an employer's statements in response to an inquiry from the Committee to indicate the existence of allegations of misconduct against the employee when an enumerated action was taken, when the employer expressly states no allegation of misconduct existed.

We conclude the plain language of section 44242.5, subdivision (b)(3) imposes the onus on the employer to determine whether to provide a notifying statement to the Committee, and thus only the employer may determine whether an enumerated action was the "result of an allegation of misconduct," triggering the Committee's jurisdiction. Applying that interpretation to the facts of this case, we conclude the Committee does not have jurisdiction to commence a formal review of Earnest's fitness to hold a credential.

GENERAL LEGAL BACKGROUND

"The Commission establishes the professional standards for obtaining teaching credentials in California. [Citation.] The Commission is also authorized to take adverse action against credential holders. [Citation.] The Commission may privately admonish or publicly reprove a credential holder, or revoke or suspend a credential holder for immoral or unprofessional conduct or persistent defiance of the laws regulating the duties of persons serving in the public school system, or for any cause that would have

3

warranted the denial of an application for a credential or the renewal thereof." (*Little v. Commission on Teacher Credentialing* (2022) 84 Cal.App.5th 322, 327 (*Little*).)

"The Commission appoints the Committee, an investigatory arm comprised of seven members." (*Little*, *supra*, 84 Cal.App.5th at p. 327.) "The Committee is charged with investigating allegations of misconduct by credential holders." (*Ibid.*)

The procedures for investigating complaints against credential holders "can be divided into three phases, each with their own requirements and limitations: the preliminary review [citation], the initial review [citation], and the formal review [citation]." (*Little*, *supra*, 84 Cal.App.5th at p. 330.) The Committee conducts "a preliminary review of information received about a credential holder, subject to" certain limitations. (*Ibid.*) "Following the preliminary review, the Committee 'may either determine to end the review or instruct staff to set the matter for initial review at a later meeting.' " (*Ibid.*)

The Committee "has jurisdiction" to commence the initial review "upon receipt" of specified information. (§ 44242.5, subd. (b)(1)-(6).) "An initial review commences when a credential holder is notified that his or her fitness to hold a credential is under review. [Citations.] The credential holder must be given a reasonable opportunity to provide written information to the Committee prior to the meeting, and the Committee's staff prepares a confidential investigative report for the Committee's consideration." (*Little*, *supra*, 84 Cal.App.5th at p. 330.)

A formal review may be held no more than six months after the commencement of the initial review. (§ 44244, subd. (b)(1).) Pertinent to this case, the Committee "has jurisdiction" to commence a formal review "upon receipt" of, among other things, a notifying statement described in section 44242.5, subdivision (b)(3). (§ 44242.5, subd. (d)(3).) The Committee thus has jurisdiction to commence a formal review upon receipt of a statement from an employer "that, as a result of an allegation of misconduct, or while an allegation of misconduct is pending," the credential holder "has been

4

dismissed, nonreelected, suspended for more than 10 days, or placed pursuant to a final adverse employment action on unpaid administrative leave for more than 10 days, or has resigned or otherwise left employment." (§ 44242.5, subd. (b)(3)(A).) "[A] change in status due solely to unsatisfactory performance" is not, however, "a result of an allegation of misconduct." (§ 44242.5, subd. (b)(3)(C).) The employer shall provide the notifying statement to the Commission "not later than 30 days after the dismissal, nonreelection, suspension, placement on unpaid administrative leave, resignation, or departure from employment of the employee." (§ 44242.5, subd. (b)(3)(B).)

The notifying statement pursuant to section 44242.5 shall be made by the superintendent of a school district in the form of a report. (Cal. Code Regs., tit. 5, § 80303, subds. (a)-(b); § 44030.5, subd. (a).) The report must include, inter alia, "all known information about each alleged act of misconduct," including contact information for witnesses and "[a]n explanation of the allegation of misconduct or pending allegation of misconduct." (Cal. Code Regs., tit. 5, § 80303, subd. (b).) The superintendent must also notify the credential holder in writing regarding the content of California Code of Regulations, title 5, section 80303 (the regulation), if a notifying statement is required. (*Id*., § 80303, subd. (e).) A superintendent's failure to make the notifying statement in the specified timeframe and form required or to provide information to a credential holder regarding the content of the regulation, "constitutes unprofessional conduct" and subjects the superintendent to investigation by the Committee. (*Id*., § 80303, subds. (d), (e).) A superintendent failing to make a report (i.e., a notifying statement) as required is subject to an adverse action by the Commission and criminal penalties. (§ 44030.5, subds. (c), (d).) "Where the Commission has information or belief that a report has not been made under this regulation, a letter shall be sent to the responsible superintendent providing facts, detailing reporting responsibilities, and requesting a response." (Cal. Code Regs., tit. 5, § 80303, subd. (h).)

5

If the Committee commences a formal review, "[t]he credential holder may[, at the hearing,] appear and respond under oath to questions from the Committee, and the Committee may call material witnesses to provide testimony, subject to examination for rebuttal evidence. [Citations.] The Committee then makes a probable cause determination. [Citation.] 'If there is no probable cause, the investigation is terminated. If there is probable cause, the credential holder may request an adjudicatory hearing pursuant to the provisions of the Administrative Procedure Act. [Citation.]' [Citation.]

"The Committee reports its probable cause findings and recommendation with respect to any adverse action to the Commission. [Citations.] The Commission may adopt the recommendation of the Committee without further proceedings if the credential holder elects to forgo an adjudicatory hearing. [Citations.] If the credential holder appeals from the Committee's recommendation, the Commission files an accusation or statement of issues." (*Little*, *supra*, 84 Cal.App.5th at pp. 330-331.)

## FACTUAL AND PROCEDURAL BACKGROUND[2]

We quote, in substantial part, the undisputed material facts set forth in the trial court's ruling.

In 2016, Earnest, while serving as the principal of Kennedy High School (School) within the Anaheim Union High School District (District), "received an email from a former [School] student who advised that one of [the School's] assistant water polo coaches (the 'Coach') had dated one student and was attempting to 'get at' another. Earnest directed a [School] athletic director to investigate, and both the athletic director and Earnest accepted the Coach's explanation that any suspicion about inappropriate conduct was a misunderstanding. Neither Earnest, nor the athletic director, nor other [School] employees who had seen the email reported the Coach to law enforcement.

---

[2] Earnest lodged the administrative record with the trial court. The parties did not provide the administrative record to this court on appeal.

"Shortly thereafter, a third party came to suspect that the Coach had had sexual contacts with a student. That party investigated his suspicions, which were later conveyed to law enforcement. The Coach eventually [pled] guilty to several sex offenses against students.

"In December 2016, the District placed Earnest on paid administrative leave. In March 2017, the District released Earnest from his position as [School] principal effective June 31, 2017 [*sic*].[3] The District offered Earnest a position as a teacher, but he resigned instead. The District did not at that time report its offer to reassign Earnest to a teaching position, or Earnest's resignation, to the Commission. Earnest is currently employed as an administrator in a different school district.

"In 2018, some of the Coach's victims sued the District, the Coach, Earnest and others in civil court. In February 2019, two of the victims' attorneys provided the Commission with copies of a crime report that law enforcement had generated while investigating the Coach. The same attorneys accused Earnest of having failed [in performing] his duties as a mandated reporter of child abuse. The Committee subsequently commenced an informal review of Earnest's 'fitness to hold a credential.' "

On January 3, 2020, the Commission sent a letter of inquiry to the District. The District responded to the inquiry approximately two weeks later—in a January 17, 2020 letter from its counsel (the District's letter). The District generally outlined the sequence of events following Earnest's receipt of the e-mail regarding the Coach's inappropriate conduct. The District then stated: "After the allegations of [the Coach's] inappropriate conduct came to light, on December 9, 2016, Mr. Earnest was placed on an administrative leave of absence. On March 8, 2017, the District released Mr. Earnest of his administrative position as of June 31, 2017 [*sic*]. The District found that Mr. Earnest

---

**3** Presumably, the trial court meant June 30, 2017, given that June consists of only 30 days.

failed in his duties to properly investigate the allegations as presented in the email. Mr. Earnest was provided the option to continue in a teaching position within the District. On April 14, 2017, Mr. Earnest's administrative leave was concluded. Mr. Earnest then voluntarily resigned from the District. A copy of the correspondences evidenc[ing] the above is attached. Although Mr. Earnest failed to perform adequately in his job performance, it was not determined to be misconduct."[4]

On January 31, 2020, Earnest responded to the Commission's inquiry. We do not discuss the specifics contained in Earnest's letter because it has no bearing on the question before us in this appeal.

"In June 2020, the Commission served Earnest with notice that the Committee had opened a formal review of his credentials" pursuant to its jurisdiction under section 44242.5, subdivision (d)(3). Thereafter, "In August 2020, the Commission notified Earnest that the Committee had found probable cause for an adverse action and had recommended that the Commission revoke his credentials. On September 2, 2020, Earnest requested an administrative hearing. [Citation.] Such a hearing never took place. Instead, Earnest advised the Commission that he intended to file a writ petition challenging the Committee's jurisdiction to conduct its formal review. [Citation.] This action followed."

In his petition for writ of mandate and complaint for declaratory relief, Earnest sought, among other things, an order finding the Commission and Committee lacked jurisdiction to take disciplinary action against him, asserting he "did not resign while allegations of misconduct were pending or as a result of allegations of misconduct, and . . . no other information . . . before the Commission [met] the criteria for jurisdiction to investigate and take adverse action against [his] credentials."

---

[4] The attachments noted in the District's letter were not included in the record on appeal.

8

Defendants opposed the petition and complaint, arguing, pertinent to this appeal, the Committee had jurisdiction to commence a formal review based on the District's letter "notif[ying] [the Committee] that [Earnest] was relieved of his administrative position, and that he had voluntarily resigned as principal." Defendants asserted, "The letter stated that [Earnest] 'failed in his duties to properly investigate the allegations as presented in the email' but concluded that '[a]lthough [Earnest] failed to perform adequately in his job performance, it was not determined to be misconduct.' Nevertheless, as a result of his failure to report the suspected child abuse to law enforcement and the subsequent criminal investigation, [Earnest] ultimately resigned from the District to seek employment elsewhere."

Pertinent to this appeal, the trial court found Earnest was excused from having to exhaust his administrative remedies because, although Earnest would not suffer a burden in exhausting his administrative remedy, defendants had already "had ample opportunity to tender their interpretation" as to the jurisdictional provisions of the Education Code, and Earnest presented a strong argument that the Committee lacked jurisdiction to pursue a formal review pertaining to the disciplinary action.

The trial court found the "language and grammatical construction [of section 44242.5, subdivision (b)(3)] plainly require the employer, as opposed to the Commission or the Committee, to say whether a change in employment status was the result of an allegation of misconduct or occurred while an allegation of misconduct was pending," and the District's letter "fell short of the jurisdictional statement" in that regard. The trial court rejected defendants' view that it may "infer jurisdiction from statements attributing no nexus between a change in employment status and an allegation of misconduct."

The trial court granted the petition for writ of mandate and ruled: "Let a Writ of Mandate be issued, setting aside the [Committee's] disciplinary recommendation against [Earnest], and enjoining the Commission . . . from acting on the recommendation." The trial court also dismissed Earnest's complaint for declaratory relief. Defendants appeal.

DISCUSSION

I

*Earnest Was Excused From Exhausting His Administrative Remedies*

Defendants argue the trial court erred in finding Earnest was excused from exhausting his administrative remedies because "the balance of the equities actually favors [defendants]." (Boldface omitted.) Earnest retorts the trial court appropriately found he was excused from exhausting his administrative remedies because he was challenging the Committee's jurisdiction to proceed with the formal review. We review de novo whether Earnest was required to exhaust his administrative remedies before resorting to the trial court. (*Sierra Club v. City of Orange* (2008) 163 Cal.App.4th 523, 536.)

"In general, a party must exhaust administrative remedies before resorting to the courts." (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1080.) " 'The exhaustion doctrine is principally grounded on concerns favoring administrative autonomy (i.e., courts should not interfere with an agency determination until the agency has reached a final decision) and judicial efficiency (i.e., overworked courts should decline to intervene in an administrative dispute unless absolutely necessary).' " (*Ibid.*) The doctrine requiring exhaustion of administrative remedies is subject to numerous exceptions. (*Public Employment Relations Bd. v. Superior Court* (1993) 13 Cal.App.4th 1816, 1826-1827.) One such exception arises "when a party claims that 'the agency lacks authority, statutory or otherwise, to resolve the underlying dispute between the parties.' " (*Coachella Valley*, at pp. 1081-1082.)

The foregoing exception does not automatically apply whenever a party challenges an agency's jurisdiction. Rather, "In deciding whether to entertain a claim that an agency lacks jurisdiction before the agency proceedings have run their course, a court considers three factors: the injury or burden that exhaustion will impose, the strength of the legal argument that the agency lacks jurisdiction, and the extent to which administrative

10

expertise may aid in resolving the jurisdictional issue." (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1082.) Applying the *Coachella Valley* factors, we conclude the exhaustion requirement was excused.

Before delving into the three-factor analysis, however, we briefly address defendants' argument that "it is reasonable to assume . . . *all three* factors must be decided in the plaintiff/petitioner's favor" and thus the trial court erred because it "*did not even consider* whether [its finding 'that the first factor clearly did not favor' Earnest] should have stopped this inquiry cold, or whether [Earnest] *could prevail* without a showing of unusual or irreparable injury." We find no merit in these assertions.

It is true that, in *Coachella Valley*, all three factors weighed in favor of excusing the exhaustion requirement and in favor of judicial intervention. (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1083.) But our Supreme Court did not indicate or signal that, to excuse the exhaustion requirement, all three factors had to be decided in the plaintiff's/petitioner's favor. As explained in *City of Fillmore*, "The three-part test involves a balancing of interests and provides a guide to the exercise of judicial discretion. [Citation.] When all three factors weigh in favor of excusing the exhaustion requirement, . . . the answer should be easy. When the three factors point in different directions, however, the answer can be more difficult." (*City of Fillmore v. Board of Equalization* (2011) 194 Cal.App.4th 716, 729, fn. omitted.) In the last instance, " 'more judicial discretion is required for resolving the exhaustion requirement.' " (*Id*. at p. 728, fn. 3.) Defendants present no reasoned argument as to why we should disagree with and depart from *City of Fillmore*. (*Id.* at p. 728 [declining to determine whether the plaintiffs had established a cognizable injury because "the second and third factors alone justif[ied] excusing the exhaustion requirement"].) We thus decline to do so.

We now turn to the three-factor analysis. To determine whether the first factor weighs in favor of excusing the exhaustion requirement, we must consider whether the injury or burden that exhaustion will impose would be "unusual or irreparable" or

whether there is "a significant public interest in obtaining a definitive resolution of [a] fundamental legal question." (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1082.)

Defendants argue "[t]he only injury identified by [Earnest] was lost time and expense participating in the administrative process," which "is not a sufficient injury for this analysis." Earnest disagrees, asserting he would be harmed if he were required to proceed with the administrative proceeding because: (1) he "will likely incur many thousands more dollars in attorney's fees" given the hearing "will likely take at least a week given the number of witnesses and roughly 1,000 pages of discovery"; (2) he will have to "miss a number of work days to attend the hearing thus . . . potentially jeopardizing his continued employment due to a prolonged absence"; and (3) "if the matter is allowed to proceed, an Accusation per Government Code [section] 11503 will be filed against [him], which is a public document, thus damaging his reputation."

We fail to see how Earnest's claims of lost time, effort, and expense constitute an unusual or irreparable injury in terms of participating in an administrative disciplinary proceeding. The first factor is not met "merely because additional time and effort would be consumed by" participation in the administrative process. (*Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1269; see *Coachella Valley*, *supra*, 35 Cal.4th at p. 1082.) The same is true as to expense. All individuals subject to an administrative disciplinary proceeding will incur lost time, effort, and expenses to defend themselves in such a proceeding. Earnest presented no evidence in the trial court to establish his claim that his injury and burden would be unusual or irreparable. Further, as defendants appropriately note, the potential harm to Earnest's reputation resulting from the filing of an accusation would be no more public than the judicial proceeding he pursued in the trial court. We also fail to see how a public accusation would constitute an unusual or irreparable injury or burden.

Earnest also argues the first factor is met because there is "a 'public interest' in obtaining a resolution of this legal question." Earnest explains the question regarding the

12

Committee's jurisdiction does not only impact himself, but also impacts "California's thousands of credentialed educators." Defendants, in turn, posit the "public interest" factor cuts against Earnest because "the public interest here is in seeing that mandated reporters such as [Earnest] carry out their legal and moral duties to investigate and report suspected child abuse; that school districts not be rewarded for attempting to artfully protect themselves from litigation by failing to identify misconduct for what it is; and that schoolchildren and the education system are protected against those who fail to carry out those duties."

We perceive a credible argument that the interpretation and application of section 44242.5, subdivision (b)(3) is a matter of public interest in that the legal issue is of concern to a substantial number of people. It is fundamental that teaching credential holders, a large group of individuals subject to the disciplinary authority of the Commission and the investigatory authority of the Committee, know whether an employer's determination that, under the circumstances, no notifying statement is required ends the potential for the commencement of a formal review, or whether the Committee has authority to later commence a formal review based on its own interpretation of information provided by the employer in response to a request for information. Given the arguments advanced by defendants in this appeal, we conclude the first *Coachella Valley* factor weighs in favor of judicial intervention. (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1082.)

Turning to the second *Coachella Valley* factor, Earnest makes "a strong and ultimately persuasive argument" that the Committee acted in excess of its jurisdiction by pursuing a formal review. (*Coachella Valley*, *supra*, 35 Cal.4th at p. 1082.) We will discuss the merits of Earnest's argument momentarily. For the time being, it suffices to say that the second factor also weighs in favor of judicial intervention. (*Id*. at p. 1083.)

As for the third *Coachella Valley* factor, we are satisfied that judicial intervention would not deprive us of the benefit of defendants' expertise. (*Coachella Valley*, *supra*,

13

35 Cal.4th at p. 1082.)  Defendants argue the trial court had not yet had "the full benefit of [their] expertise," broadly stating "the agency would have had a far fuller opportunity to apply its understanding and interpretation of the statutes and regulations" if the factual record had been developed in an administrative hearing.  Not so.  The question presented is whether the District's letter triggered the Committee's jurisdiction.  We fail to see how the admission of witness testimony and documentary evidence at the hearing would assist in resolving that question.

Although we ordinarily accord deference to an agency's interpretation of governing statutes and implementing regulations, the " 'weight' " of any such deference is "fundamentally situational."  (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12, italics omitted.)  The interpretation of section 44242.5 and its application to the undisputed facts of this case are pure questions of law, which we are well equipped to resolve.  (*Carmona v. Division of Industrial Safety* (1975) 13 Cal.3d 303, 310.)  The third *Coachella Valley* factor thus weighs in favor of judicial intervention as well.

Considering and weighing the three *Coachella Valley* factors, we conclude Earnest was excused from exhausting his administrative remedies.  Judicial intervention was and is thus appropriate.

We note defendants, in a footnote under the heading, "The exception to the exhaustion requirement does not apply here; indeed, the balance of the equities actually favors [defendants]" (boldface omitted), assert there was "an additional jurisdictional defect in the writ" because "that writ was really a writ of prohibition" and such a writ "may not lie to restrain a nonjudicial act."  An appellant must state "each point under a separate heading or subheading summarizing the point."  (Cal. Rules of Court, rule 8.204(a)(1)(B).)  The "[f]ailure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by heading."  (*Pizarro v. Reynoso*

14

(2017) 10 Cal.App.5th 172, 179.)  We accordingly decline to consider the jurisdictional defect argument.

## II

### *Defendants' Judicial Restraint Argument Is Unavailing*

Defendants argue the trial court should have denied the petition under the doctrine of judicial restraint because, "[b]y prematurely intervening in this matter, the trial court engaged in 'idle acts' and unnecessarily engaged in judicial activism, where judicial restraint was called for."  (Citing Civ. Code, §§ 3532 ["The law neither does nor requires idle acts"], 3533 ["The law disregards trifles"].)  It does not appear that defendants raised this argument in the trial court.  We need not consider arguments raised for the first time on appeal.  (See *People ex rel. DuFauchard v. U.S. Financial Management, Inc.* (2009) 169 Cal.App.4th 1502, 1512 [exhaustion requirements not raised in trial court deemed forfeited on appeal].)

Furthermore, even assuming the argument were properly before us, we would reject it.  We cannot say that requiring compliance with section 44242.5 was an idle act or mere trifle.  Nor can we say that the trial court should have refrained from resolving the parties' dispute, particularly given the Committee maintained it had jurisdiction to pursue a formal review.

## III

### *The Committee Did Not Have Jurisdiction To Conduct A Formal Review*

The primary question is whether the Committee may interpret the statements in the District's letter as notification Earnest was relieved as principal and later resigned as a result of an allegation of misconduct.  In that regard, defendants posit "the question at the heart of this case" is "[w]ho gets to define 'misconduct.' "

Defendants argue the District's letter conveyed "all of the *information* necessary" to vest the Committee with jurisdiction to conduct a formal review, "namely:  [¶]  (1) that [Earnest] committed misconduct when he 'failed in his duties to properly investigate the

15

allegations' of sexual abuse by [the Coach] against minors on the girls' water polo team; and [¶] (2) that as a result of his failure to investigate and report the suspected child abuse to law enforcement, [Earnest] was relieved as principal, and then resigned from the District." Defendants focus on the dictionary definition of "misconduct," arguing Earnest's actions constituted a dereliction of duty by someone in a position of authority or trust, and violated Penal Code section 11166 and the District's own guidelines, which imposed on Earnest a duty to report suspected child abuse. In essence, defendants argue the Committee has authority to determine the statement in the District's letter that Earnest " 'failed in his duties to properly investigate the allegations' " against the Coach constitutes a statement that Earnest resigned and the District took the adverse employment action as a result of an allegation of misconduct for purposes of triggering its jurisdiction under section 44242.5, subdivision (d).

The interpretation of a statute and the application of a statute to undisputed facts are legal issues subject to de novo review. (*Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1491; *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384.) In reviewing questions of law, we review the trial court's ruling and are not bound by the trial court's stated reasons or rationales. (*Scott v. Common Council* (1996) 44 Cal.App.4th 684, 689; *Kaiser Foundation Hospitals v. Superior Court* (2005) 128 Cal.App.4th 85, 107.)

" ' " 'As in any case involving statutory interpretation, our fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning.' " ' [Citation.] '[W]e consider the language of the entire scheme and related statutes, harmonizing the terms when possible.' " (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141; see *People v. Valencia* (2017) 3 Cal.5th 347, 357 [" '[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and

16

with each other, to the extent possible' "].)  If the language of the statute is clear and unambiguous, there is no need for judicial construction and our task is at an end.  If the language is reasonably susceptible of more than one meaning, however, we may examine extrinsic aids such as the apparent purpose of the statute, the legislative history, the canons of statutory construction, and public policy.  (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838; *People v. Arias* (2008) 45 Cal.4th 169, 177.)

Before we delve into the analysis, we note defendants attack the trial court's reasoning on various grounds, e.g., that the trial court erred in its application of "non-optional canons of [statutory] construction" and was misguided in "its purported reliance on the 2013 passage of [Assembly Bill No.] 449 and its accompanying legislative history."  Inasmuch as our standard of review is de novo and we review the trial court's ruling and *not* its rationale, we do not address defendants' specific assertions of error with regard to the trial court's reasoning.

Jurisdiction to conduct a formal review under section 44242.5, subdivision (d)(3) is conferred on the Committee upon "receipt" of an employer's statement "notifying" the Committee about an enumerated change in a credential holder's employment status "as a result of an allegation of misconduct."  (§ 44242.5, subd. (b)(3)(A).)  To "notify" means to "inform."  (Black's Law Dict. (7th ed. 1999) p. 1090, col. 2.)  And a "result" means a "consequence, effect, or conclusion."  (Black's Law Dict. (rev. 4th ed. 1968) p. 1478, col. 2; Black's Law Dict. (10th ed. 2014) p. 1509, col 1.)

By requiring that the Committee's jurisdiction to conduct a formal review under section 44242.5, subdivision (d) be triggered upon the Committee's "receipt" of an employer's notifying statement, the Legislature imposed the onus on the employer to determine whether to provide a statement to the Committee.

Section 44242.5, subdivision (b)(3) provides:  If an employer takes an enumerated adverse employment action against a credential holder as a result of (i.e., a consequence

17

of) an allegation of misconduct, it must provide the notifying statement to the Committee within 30 days after taking such action. (§ 44242.5, subd. (b)(3)(B).) The employer must also provide a notifying statement if it has information that the credential holder resigned or otherwise left employment as a result of (i.e., as a consequence of) an allegation of misconduct. (§ 44242.5, subd. (b)(3)(A).) Conversely, if an employer takes an enumerated adverse employment action based solely on a credential holder's unsatisfactory performance or takes such action for reasons other than as a result of an allegation of misconduct, the employer need not provide a notifying statement to the Committee. (§ 44242.5, subd. (b)(3)(A), (C).)

Plainly, the determination of whether an enumerated action was taken as a result of (i.e., as a consequence of) an allegation of misconduct lays at the feet of the employer. A necessary part of that determination is whether an allegation of misconduct existed or was made in the first place. We find no ambiguity in the plain language of the statute.

Applying the foregoing to the undisputed facts in this case, it is clear the Committee has no jurisdiction to commence a formal review based on the District's letter. The District expressly wrote it did not take the adverse employment action as a result of an allegation of misconduct. The District instead wrote the adverse employment action was taken as a result of the District's finding that Earnest "failed to perform adequately in his job performance" because he "failed in his duties to properly investigate the allegations as presented in the email." The District further wrote Earnest voluntarily resigned after his administrative leave concluded—with no indication as to the reason for his resignation. Contrary to defendants' argument, the District did not state that Earnest failed *to report* suspected sexual abuse and that his failure to do so led to the adverse employment action and his resignation.

Defendants argue our interpretation fails to appropriately consider and defer to the public protection purposes of the statutes and defendants' interpretation because: (1) "Education Code section 2 makes it *explicit* that all of the provisions of the Education

18

Code must be read as *broadly* as possible to effect their public protection purposes"; and (2) "courts are required to give the broadest possible reading to 'remedial or protective statutes and regulations,' such as licensing acts." The fact that the Education Code is to be liberally construed to effectuate its protective purposes does not mandate that the legislative directive regarding the Committee's jurisdiction be ignored. (See *Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 8 ["The fact that the workers' compensation laws are to be liberally construed '. . . does not mean that the legislative mandate of [Labor Code] section 4750 is to be ignored' "]; *Oda v. Elk Grove Union Grammar School Dist.* (1943) 61 Cal.App.2d 551, 556 [code provision requiring liberal construction of the School Code "w[ould] not justify a disregard of the plain terms of a statute"].)

We are not unmindful that the Commission and Committee serve important roles in protecting schoolchildren. The importance of defendants' work does not, however, override an express statutory directive. The District's concern that the legislative scheme allows school districts "to shield administrators and teachers from [Committee] investigation and potential discipline by simply refusing to characterize their behaviors as 'misconduct,' even where they clearly are," is best addressed to the Legislature. We note, however, the Legislature has already provided the Commission with recourse against a superintendent who fails to submit a notifying statement. The Committee may investigate and the Commission may pursue an adverse action against a superintendent who fails to comply with the mandatory reporting requirements. (Cal. Code Regs., tit. 5, § 80303, subd. (d); § 44030.5, subd. (c).) The superintendent may also be subject to criminal penalties, if he, she, or they failed to file the required report. (§ 44030.5, subd. (d).)

For the foregoing reasons, we conclude the Committee does not have jurisdiction to commence a formal review of Earnest's fitness to hold a credential.

19

## DISPOSITION

The judgment is affirmed.  Earnest shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)



/s/
ROBIE, Acting P. J.


We concur:



/s/
MAURO, J.



/s/
BOULWARE EURIE, J.


20